IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Southern Division)

ALEJANDRO FERNANDO VALDES,

(p/k/a MC LIGMA, f/k/a outlier.mp3)

Plaintiff, Pro Se,

USDC - GREENBELT
'26 AUG 11 PM1:43

v. CIVIL ACTION NO.: AAQ 2 6 CV 3 1 5 9

UNIVERSITY OF MARYLAND, COLLEGE PARK,

and

BOARD OF REGENTS OF THE

UNIVERSITY SYSTEM OF MARYLAND,

(Prince George's County)

Defendants.

---

COMPLAINT FOR VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

AND DEMAND FOR JURY TRIAL

---

Plaintiff Alejandro Fernando Valdes, proceeding pro se, brings this Action against Defendants University of Maryland, College Park and the Board of Regents of the University System of Maryland, alleging as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this civil rights action against Defendant University of Maryland, College Park (UMD) pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Operating artistically as MC LIGMA (formerly performing and producing as outlier.mp3), Plaintiff is an alumnus, researcher, and artist who held an active, paying University of Maryland Alumni Association membership with active campus facility and recreation access at the time of the incident. This action seeks declaratory relief and compensatory damages for Defendant's discriminatory treatment based on perceived race, retaliatory threats of exile, selective law enforcement response, evidence spoliation, and obstruction of Plaintiff's academic endeavors and federal grant writing activities on campus grounds.

## II. JURISDICTION AND VENUE

2. This action is brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., prohibiting discrimination on the basis of actual or perceived race, color, or national origin in programs and activities receiving federal financial assistance.

3. Subject-matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1343 (Civil Rights Jurisdiction).

4. Venue is proper in the Southern Division of the District of Maryland pursuant to 28 U.S.C. § 1391(b) because Defendant is located within Prince George's County, Maryland, and a substantial part of the events giving rise to the claims occurred in this judicial district.

## III. PARTIES

5. Plaintiff: Alejandro Fernando Valdes is a light-skinned Hispanic/Latino individual residing in Austin, Texas, who is visually perceived as white/Caucasian. Plaintiff is a trained biologist, former FDA post-baccalaureate researcher in immunology, published co-author on NIH/Yale/Howard public health initiatives stemming from the Renee Fleming Kennedy Center NeuroArts framework, and an interdisciplinary artist, music producer, recording artist, DJ, dancer, and designer with an extensive live performance history. Plaintiff's research portfolio synthesizes sound design, performance, movement, and bioacoustics as core methodologies for public health and emergency response interventions. Prior to the incident, program leadership at the National Center for Complementary and Integrative Health (NCCIH) at the NIH explicitly reviewed Plaintiff's project concept, confirming its novel scientific merit and encouraging formal federal grant submission. Plaintiff is an alumnus of Defendant UMD, a former Banneker/Key Scholar, Fulbright semi-finalist, and former student leader who held an active, paying Alumni Association membership with active facility access privileges (including RecWell Eppley Recreation Center and Stamp Student Union) during the Autumn 2025 period.

6. Defendant: University of Maryland, College Park (UMD) is a public land-grant research university receiving federal financial assistance from the U.S. Department of Education, National Institutes of Health (NIH), and other federal agencies.

## IV. FACTUAL ALLEGATIONS

### The Incident & Protected Activity

7. On November 5, 2025, at approximately 20:50 hours, Plaintiff was lawfully present at the TerpZone facility inside the Stamp Student Union on the campus of Defendant UMD.

8. At the time of the incident, Plaintiff was lawfully seated at a workstation in the facility conducting time-sensitive federal research and drafting high-level grant proposals:

> (a) Grant Scope & Funding: Plaintiff was actively drafting five National Geographic Society grant proposals (ranging from $20,000.00 to $100,000.00) and a $300,000.00 National Institutes of Health (NIH) SEED Small Business Innovation Research (SBIR) proposal. These multi-institutional projects focused on bioacoustics, disaster preparedness, expedition fieldwork, and sound-based neurological tools, building upon Plaintiff's prior NIH-supported rhythm and neuroscience research background.
>
> (b) Institutional Backing: Plaintiff's research pipeline was backed by formal written commitments and letters of support on official letterhead, including academic faculty at the University of Georgia, international research faculty in Ghana, a macro-scale consulting firm in Brazil, senior administrative staff at the Prince George's County Department of Parks and Recreation, senior collaborators at Defendant UMD, and academic partners across the Netherlands and Bolivia.
>
> (c) While Plaintiff was executing this research at a seating station at the TerpZone facility, with overhead facility monitors simultaneously broadcasting animated television (*South Park*) in the background, a group of approximately six individuals confronted Plaintiff and demanded he vacate his exact seat so they could play video games (specifically, FIFA on PlayStation). The group targeted Plaintiff and demanded his specific chair despite numerous other television monitors, gaming stations, and chairs remaining entirely unoccupied and available throughout the facility.

9. While executing this time-sensitive federal research and grant writing, Plaintiff was approached by an off-duty facility employee and pressured to vacate his seating area. Following a verbal disagreement regarding space usage, tension escalated with a group of individuals present in the facility.

10. Upon information and belief, the group consisted in part of non-students and non-affiliated individuals who lacked institutional standing at Defendant UMD.

11. During the exchange, an individual in the group made an explicit, verbal physical death threat to Plaintiff, stating: "Better watch what you say, we're going to kill you."

12. Plaintiff did not engage in physical conflict, remained seated, and immediately engaged in protected activity by calling 911 to the University of Maryland Police Department (UMPD) to seek law enforcement protection and de-escalate the physical threat prior to police arrival.

Discriminatory Response, Evidence Spoliation, & Administrative Misclassification

13. Upon arrival (Case #2025-00248003), UMPD officers and facility staff engaged in intentional disparate treatment based on perceived race and color (white/Caucasian). Rather than investigating the death threat issued against Plaintiff, responding officers treated Plaintiff, the reporting victim and a light-skinned alumnus perceived as white, as the sole perpetrator and problem for exercising his right to call law enforcement.

14. Responding officers failed to formally charge, ban, or issue trespass notices to the non-affiliated individuals who issued the physical death threat.

15. Instead, the lead responding UMPD officer explicitly targeted and intimidated Plaintiff, threatening him with total institutional exile by gesturing directly to overhead surveillance cameras and declaring that law enforcement could utilize the CCTV footage to ban Plaintiff from returning to campus facilities permanently.

16. Immediately following his 911 call, Plaintiff initiated personal audio recording to capture the interaction with UMPD officers, creating a contemporaneous evidentiary record of the responding officers' intimidation tactics, selective enforcement, and failure to investigate the physical threat.

17. Shortly following the incident, Plaintiff submitted formal administrative, legal, and public records requests for the preservation and production of the 911 audio call recording, UMPD officer body-worn camera (BWC) footage, and TerpZone surveillance video. Defendant UMD and UMPD subsequently claimed the recordings were unavailable or lost. Because Defendant had actual knowledge of pending administrative complaints and civil rights claims, Defendant's failure to preserve this critical objective evidence constitutes spoliation, warranting an adverse inference that the lost recordings contained direct evidence of retaliatory threats and disparate treatment.

18. While initial intake logs recorded Plaintiff's demographic background, Defendant's investigative records improperly mischaracterized and manipulated Plaintiff's racial classification on official forms. Defendant utilized this administrative distortion to minimize the racial elements

of the encounter, obscure disparate enforcement patterns, and defeat Plaintiff's administrative civil rights complaints.

Administrative Exhaustion & Resulting Damages

19. Plaintiff filed a formal administrative complaint with the U.S. Department of Education Office for Civil Rights (OCR Case #03262057). On July 30, 2026, OCR issued a determination dismissing the administrative file while noting that individuals who file complaints with OCR retain the right to pursue a private suit in court under Title VI.

20. As a direct result of Defendant's retaliatory threats of exile, deliberate indifference, administrative misclassification, evidence spoliation, and failure to provide equal protection, Defendant severely disrupted Plaintiff's academic endeavors, creative releases, and federal grant pipelines, resulting in loss of institutional standing, reputational harm, and direct economic damages.

V. CAUSES OF ACTION

COUNT I: VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

(42 U.S.C. § 2000d — Intentional Disparate Treatment & Hostile Environment Based on Perceived Race)

21. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

22. Defendant receives federal financial assistance and is bound by the mandates of Title VI of the Civil Rights Act of 1964.

23. Title VI prohibits discrimination on the basis of actual or perceived race, color, or national origin in federally funded programs.

24. Defendant engaged in intentional discrimination, disparate treatment based on perceived race and color (white/Caucasian), selective enforcement, and deliberate indifference to a hostile environment.

25. As a direct and proximate result of Defendant's statutory violations, Plaintiff sustained direct economic losses, severe disruption to professional endeavors, and consequential damages.

COUNT II: VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

(42 U.S.C. § 2000d — Retaliation for Engaging in Protected Civil Rights Activity)

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

27. Plaintiff engaged in protected activity under Title VI by calling 911 to report a physical threat and subsequently filing administrative civil rights complaints against Defendant.

28. Defendant, through its police officers and agents, subjected Plaintiff to adverse action, including explicit threats of permanent institutional exile, administrative misclassification of records, and bad-faith failure to preserve exculpatory video and audio evidence, in direct retaliation for Plaintiff's protected activity.

29. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered loss of facility access, severe disruption to federal research activities, reputational injury, and financial damages.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant University of Maryland, granting the following relief:

A. Compensatory and Consequential Damages: Judgment against Defendant in an amount to be proven at trial for direct economic losses, research and professional trajectory disruption, reputational injury, and statutory damages under federal civil rights laws;

B. Declaratory Relief: A formal judicial declaration that Defendant's acts and omissions violated Title VI of the Civil Rights Act of 1964;

C. Evidentiary Sanctions: An adverse inference ruling regarding Defendant's spoliation of 911 audio, officer bodycam footage, and CCTV surveillance records;

D. Costs: Award Plaintiff the full costs of this action and necessary filing fees;

E. Further Relief: Grant such other and further relief as this Court deems just, proper, and equitable.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Alejandro Fernando Valdes, Plaintiff Pro Se

905 Edgecliff Terrace, Austin, TX, 78704

Phone: 240-438-5640

Email: afvaldes123@gmail.com

Dated: August 11, 2026